**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DARRYL C. CARTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 26-920 (JEB)** |
| **U.S. DEPARTMENT OF JUSTICE,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

This case concerns the efforts of *pro se* Plaintiff Darryl C. Carter to obtain documents from the Federal Bureau of Investigation through the Freedom of Information Act.  Since July 2021, Plaintiff has been seeking to compel the FBI to produce a broad range of documents, and he has refused to narrow his request either in response to agency inquiries or in litigation.  The FBI nonetheless searched for responsive records and turned up more than 2 million pages.  It subsequently produced 1,475 pages to Plaintiff, even though he had agreed to pay only $50 in duplication fees.  The Government now moves for summary judgment, claiming that its search, limited production, and withholding were reasonable, and Carter has not responded.  The Court will grant the Motion.

**I.    Background**

The backstory for this case begins in 2021 with a FOIA request initially submitted by Carter to the FBI on June 23 of that year.  His request sought, without any limitation, "[a]ll documents; emails; memos; notes; papers; text messages; land line telephone records; . . . and human readable communication . . . regarding 1.) 'Formal complaints submitted electronically'" as well as "2.) 'Tips' via FBI Tips link" within the period of June 1–22, 2021, and it noted his

1

willingness to pay up to $50 for the documents.  See ECF No. 86-4 (Joseph E. Bender, Jr. Declaration), ¶ 5.  Carter also asked the FBI for expedited processing.  Id.  When the Bureau denied this latter request, he filed suit in the Southern District of New York under 5 U.S.C. § 552 et seq.  See ECF No. 2 (Compl.).  On August 4, the case was transferred to the Eastern District of New York given that Plaintiff's residence is located there.  See ECF No. 13 (First Notice of Transfer).  Carter then unsuccessfully appealed the transfer order to the United States Court of Appeals for the Second Circuit.  See ECF No. 16 (Mandate).

The FBI ultimately searched for documents that would be responsive to his request.  Not surprisingly, the search yielded more than 2 million pages, which entailed tens of thousands of dollars for duplication and processing fees.  See Bender Decl., ¶ 18.  The FBI nonetheless processed 1,548 pages, which was proportionate to the $50 Carter had agreed to pay.  See ECF No. 86 (Mot.) at 8.  Of those pages, it produced 1,475 and withheld the remaining 73 under FOIA Exemptions 6 and 7.  Id.  Plaintiff then filed a letter to the court in the Eastern District of New York seeking to transfer the case to the District of Columbia.  See ECF No. 82 (Mot. to Transfer).  The Government did not oppose Plaintiff's motion, see ECF No. 83 (Resp. to Order to Show Cause), so the case was transferred to this Court.  See ECF No. 84 (Second Notice of Transfer).

The Government now moves for summary judgment, contending that it performed its statutorily mandated duties to search for all documents that may be responsive, and it has produced to him 1,475 pages, commensurate with the amount in fees that Carter has initially agreed to pay.  See Mot. at 5–8.  The Government also argues that it has appropriately withheld 73 pages in accordance with FOIA exemptions.  Id. at 9.  Plaintiff has filed no response despite direction from the Court to do so.  See ECF No. 87 (Neal Order).

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). An issue of material fact is one that is capable of changing the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases are typically decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such agency affidavits or declarations "are accorded a presumption of good faith, which cannot be

rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Defendant contends that it is entitled to summary judgment for two reasons. It maintains first that the search performed in response to Plaintiff's request was adequate. See Mot. at 5–7. It also argues that certain withholdings were proper. Id. at 9–15. Here, the Bureau makes factual assertions through declarations, which the Court will accept as true at this stage given that Plaintiff has not submitted his own affidavits, declarations, or documentary evidence to the contrary. Neal, 963 F.2d at 456 (noting that factual assertions in movants' declarations may be accepted as true unless opposing party submits evidence to the contrary). The Court addresses each of Defendant's two assertions in turn.

A.    Adequacy of Search and Release

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Just., 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

To demonstrate the adequacy of its search, Defendant offers two declarations: one from Joseph E. Bender, Jr., then the Acting Section Chief of the Record/Information Dissemination in the Information Management Division of the FBI; and another from Amie Marie Napier, that Section's subsequent Chief. See Bender Decl., ¶ 1; ECF No. 86-2 (Amie Marie Napier Declaration), ¶ 1. These declarations describe the extensive steps that the Bureau undertook in response to Carter's two-part request. As to the first, the FBI concluded that a request for all "formal complaints submitted electronically" did not provide sufficient detail or criteria to conduct a feasible search. See Bender Decl., ¶ 17.

5

As to the second part, the FBI searched the Central Records System, turning up more than 2.3 million pages of potentially responsive documents from approximately 589,000 tips during the period specified by Carter's request.  Id., ¶ 18.  The FBI's declarations demonstrate a comprehensive search through its internal records, including a scoping review to identify the pool of potentially responsive documents.  See Napier Decl., ¶ 15–24.  The Court finds that these steps sufficiently capture Plaintiff's correspondingly broad request and adequately match the request's criteria.

The declarations also detail the reasoning behind the Bureau's decision to process and release only a fraction of the identified pages to Carter.  Agencies must charge fees for the processing of documents requested under FOIA.  See 28 C.F.R. § 16.10(a).  Here, the declarants estimate that duplicating the full swathe of records found would cost between $70,000 and $117,000.  See ECF No. 86-5 (Bender Exhs.), Exh. K (Duplication Fee Letter).  Carter, however, has consented to pay only $50.  See id., Exh. A (eFOIA Req.).  The FBI explained its estimated fee to Carter and notified him that he could narrow the scope of the request to reduce the duplication cost.  See Bender Decl., ¶ 18.  The Bureau maintains that it has fulfilled its responsibility by turning over 1,475 pages of FOIA-responsive records to Plaintiff — the number his $50 budget would cover.  See Mot. at 8.  Absent any contrary proposal from Carter agreeing to pay the heightened fee cost, the Court agrees that the FBI's search and production decisions have fulfilled its FOIA obligations to this point.  See SafeCard, 926 F.2d at 1201 (noting that agency declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (quotation marks omitted).

6

Plaintiff does not allege that the search was inadequate, nor does he question the duplication fees required in order for the FBI to fully produce the millions of responsive documents.  Instead, Plaintiff offers scattershot claims, alleging, for example, that the Bureau is engaged in a "'Shadow Game'" where the "government . . . [is] hiding and harassing one on the 'Shadows' via, virtually, my entire online presence."  ECF No. 56-1 (Darryl C. Carter Declaration), ¶ 6.  As Carter never responds to the Government's factual assertions that the search was thorough and documented, the Court can conclude only that they are true.  As a result, it holds that the search was legally adequate, and the Government is thus entitled to summary judgment on this issue.

B.      Exemptions

Next up is the propriety of the Government's withholdings of certain documents from Carter.  FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  Id., § 552(b)(1)–(9).  These exemptions are to be "narrowly construed," Rose, 425 U.S. at 361, and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).  An agency may withhold any records that satisfy the requirements of at least one exemption.  See U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 755 (1989).  The Bureau here has withheld certain documents or portions of documents, invoking Exemptions 6, 7(C), and 7(E).  The Court looks at Exemptions 6 and 7(C) together because they both implicate privacy interests and then considers Exemption 7(E).

          1.     *Exemptions 6 and 7(C)*

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id., § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. Dep't of Just., 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Just., 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to weigh the same interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reps. Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." Id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. Id. Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other similar files. Id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. Dep't of Just., 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491.

As a result, if the records and information Defendant seeks to withhold in this case were "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to consider the higher bar of Exemption 6. This criterion is plainly satisfied here, as records of tips submitted to the FBI are plainly documents that are compiled during the course of investigation, prosecution, and other law enforcement activities. See Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex., 740 F.3d 195, 203 (D.C. Cir. 2014) (describing that record is "compiled" for law-enforcement purposes if it was "created, gathered, or used" for such purposes).

This threshold question answered, the Court must now balance the privacy interests at stake in disclosure with the public interest in release. Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 172–74 (2004) (describing this balancing test). The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655 F.3d at 6. In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Reps. Comm., 489 U.S. at 763. To constitute a privacy interest under FOIA, the claimed interest must be a "substantial privacy interest [, which] is anything greater than a *de minimis* privacy interest." Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229–30 (D.C. Cir. 2008).

Defendant argues that the withheld documents implicate substantial privacy interests. To support this argument, the Bureau provides factual evidence that these documents include names and identifying information of FBI Special Agents and other staff. See Mot. at 12; Napier Decl., ¶¶ 34–36. The Court finds that there is a substantial privacy interest in protecting the identity of

9

Special Agents and other FBI employees given that revealing their identities may expose them to harassment.  See Wood v. Fed. Bureau of Investigation, 432 F.3d 78, 88 (2d Cir. 2005) (recognizing privacy interest under FOIA in identities of government investigators where revealing their identities would lead to embarrassment or harassment).

As with the rest of this Motion, Carter offers up no countervailing public interest to offset the privacy interests asserted by the FBI.  To the extent that there is any inherent public interest in these documents, the Court finds that it would not offset the substantial privacy interests detailed in the Government's Motion.  The FBI accordingly prevails on the balancing test and may withhold documents under 7(C).

2.    *Exemption 7(E)*

Exemption 7(E) allows agencies to withhold information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

In order for the Government to invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements.  First, like with all exemptions under § 552(b)(7)(E), the Bureau must show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason.  Id.  Second, it must establish that the records contain law-enforcement techniques and procedures that are "generally unknown to the public."  Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (quoting Albuquerque Pub. Co. v. U.S. Dep't of Just., 726 F. Supp. 851, 857 (D.D.C. 1989)).  Finally, the Government must show that disclosure "could reasonably be expected to risk circumvention of the law."  Id.

Defendant clears the first bar because the records at issue were clearly compiled for law enforcement purposes, as the records contain non-public information regarding investigative techniques and other procedures to advance the Bureau's law-enforcement mission. See Napier Decl., ¶¶ 44–49. Defendant also satisfies the second requirement because the records relate to the Bureau's law-enforcement techniques that were not generally known. Indeed, these records include the identities of certain investigative databases and the techniques used to determine which tips warrant additional investigation. Id., ¶ 50. As the Bureau states, "Disclosing the criteria used by investigators to determine whether complaints and information warrant further investigation would reveal key information about FBI investigative strategies." Id., ¶ 50. The Court thus concludes that the second requirement is met because "[t]he phrase 'techniques and procedures[]' . . . refers to how law enforcement officials go about investigating," surveilling, or preventing crime. Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010); Pub. Emps. for Env't Resp., 740 F.3d at 203. Last, the Government explains that if these documents were disclosed, it would lead to the risk of circumvention of the law because potential wrongdoers could gain expertise to hack or disrupt law-enforcement databases. See Napier Decl., ¶¶ 46, 48, 52. These documents, therefore, were properly withheld under Exemption 7(E).

## IV.    Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 5, 2026

11